UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANTONIO CHAVEZ-JUAREZ, | Case No. 3:17-cv-00192-MMD-WGC |
| Petitioner, | ORDER |
| v. | |
| PERRY RUSSELL,[1] *et al.*, | |
| Respondents. | |

**I.     SUMMARY**

Petitioner Antonio Chavez-Juarez, who is serving an aggregate sentence of 55 years to life in prison after being found guilty of numerous charges of sexual misconduct with a child, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (*See* ECF Nos. 6, 21-28.) This matter is before the Court for adjudication of the merits of the remaining ground in Chavez-Juarez's counseled, first amended petition, which alleges that the state district court's reliance on his failure to accept guilt when fashioning his sentence violated his right against self-incrimination. (ECF No. 15 ("Petition").) For the reasons discussed below, the Court denies the Petition and a Certificate of Appealability.

**II.    BACKGROUND[2]**

Chavez-Juarez testified that he lived in Reno, Nevada with his girlfriend, Martina, and her two children in March of 2012. (ECF No. 21-18 at 156, 158.) Chavez-Juarez denied sexually penetrating Martina's daughter, A.C., with either his penis or finger. (*Id.*

---

[1]The state corrections department's inmate locator page states that Chavez-Juarez is currently incarcerated at Northern Nevada Correctional Center. Perry Russell is the warden for that facility. At the end of this order, the Court directs the Clerk of Court to substitute Perry Russell as a respondent for the prior Respondent State of Nevada, pursuant to rule 25(d) of the Federal Rules of Civil Procedure.

[2]The Court makes no credibility findings or other factual findings regarding the truth or falsity of this evidence from the state court.

at 163–64.) Chavez-Juarez also denied touching A.C. for his own personal satisfaction. (*Id.* at 171.) Chavez-Juarez explained that he touched A.C. on March 9, 2012, but it was an accident, as he was simply "cover[ing] her up with [a] blanket." (*Id.* at 164–65.) Regarding a situation in a hotel room, Chavez-Juarez testified that A.C. "tried to touch [his] genitals," so he "got up and went to the bathroom." (*Id.* at 165–66.) And regarding two other situations in the living room of their apartment, Chavez-Juarez testified that A.C. sat on top of him once when he was "practically sleeping" and once put her hand between the pillow on his lap and his legs while they were sitting on the couch together. (*Id.* at 166–68.) Chavez-Juarez quickly removed himself from both of those situations. (*Id.*)

A jury found Chavez-Juarez guilty of sexual assault on a child, four counts of lewdness with a child, unlawful use of a minor as the subject of a sexual portrayal in a performance, and possession of visual presentation depicting sexual conduct of a child. (ECF No. 21-21.) Chavez-Juarez later made the following statement at his sentencing:

> At this time, the only thing that I would like to let you know is that I am going to be appealing this - - this decision - - because I believe that what [the prosecutor] is trying to do is to get a sentence for me. I don't agree with that sentence that he's asking for.
>
> I believe, just like my family said before, the people sitting right behind me, I believe you can see it's not just one person telling you about what type of person I am. So I don't think I should be saying - - giving you an explanation, or telling you what type of person I am.
>
> As you can see, the alleged victim, they are not here. And I believe that would tell you a lot of things about them. They have obtained what they were looking for. And now they are home, they are happy, and here I am. I'm just trying to figure out what is going to happen to my future.
>
> The one thing I would like to mention is regarding the appeal, because [the prosecutor] - - the office of [the prosecutor], they did a perfect job. And one of those things is - - they edited the video, the video where I gave a statement. That's the video where the victim's mom - - I said several times that I believed that this lady, she was a prostitute. . . . I am saying that the mother of the alleged victim, she is a prostitute. And I believe that's where the girl got that type of behavior. And one of the reasons why I believe that is because whenever the girl - - whenever she was behaving that way, she kind of make [sic] fun of things.
>
> And that's all I have to say. I just wanted you to notice that it's not me that is saying good things about myself, it's the people - - it's the people that know me.

(ECF No. 21-26 at 32–33.) After sentencing Chavez-Juarez to an aggregate of 55 years to life in prison, the state district court explained the basis of its sentence:

> It is appropriate that this case was tried. The trial in this matter clarified, through the testimony of the victim, through the statements of the defendant that were admitted, which he made to the police prior to trial, and through his own testimony at trial. That clarification, through the process of constitutional confrontation, through cross-examination, and the presentation of evidence, reveals beyond any doubt, in my mind, the guilt of the defendant of the crimes to which he was adjudged guilty by the jury. He statements to the police, and his testimony at trial, reveal that his denial about the reality of what occurred is complete.
>
> His denial is complete in the sense that, as his allocution today reveals, he has projected, and blaming on an 8-year-old at the time of these offenses, the sexual misconduct that occurred.
>
> Today, for example, he would indicate to me that the 8- or 9-year-old victim was acting like a prostitute. And that kind of projection demonstrates a complete denial of responsibility for among the most serious kinds of misconduct which can be committed in our society.
>
> . . . .
>
> The sentence entered by the Court today is long, consistent with statute, and one which the defendant's conduct has earned him.
>
> Engaging in these acts does not disqualify you from other good things in your life, Mr. Chavez-Juarez. But engaging in these acts has earned you the sentences just imposed.

(*Id.* at 36–39.)

Chavez-Juarez's challenge to his conviction was denied on direct appeal. (ECF No. 22-11.)

### III.   LEGAL STANDARD

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

///

///

4

## IV. DISCUSSION

In ground 3, Chavez-Juarez alleges that his Fifth Amendment right against self-incrimination was violated when the state district court relied on his failure to accept guilt and express remorse when fashioning his sentence. (ECF No. 15 at 17.)

### A. State Court Determination

In affirming Chavez-Juarez's judgment of conviction, the Nevada Supreme Court held:

> Chavez-Juarez argues that the district court abused its discretion by imposing a sentence based on his refusal to admit guilt. He relies on what he contends is a "well settled" Nevada rule "that a district court abuses its sentencing discretion when it relies on a defendant's refusal to admit guilt and take responsibility in fashioning a sentence."
>
> We review a district court's imposition of a sentence for an abuse of discretion. *Parrish v. State*, 116 Nev. 982, 989, 12 P.3d 953, 957 (2000). The reliance upon prejudicial matters "constitutes an abuse of discretion that necessitates a resentencing hearing before a different judge." *Castillo v. State*, 110 Nev. 535, 545, 874 P.2d 1252, 1259 (1994), *disapproved of on other grounds by Wood v. State*, 111 Nev. 428, 430, 892 P.2d 944, 946 (1995).
>
> Chavez-Juarez correctly cites Nevada caselaw for the principle that reliance on a defendant's refusal to admit guilt and take responsibility at sentencing constitutes an abuse of discretion. *Brake v. State*, 113 Nev. 579, 584-85, 939 P.2d 1029, 1032-33 (1997); *see also Brown v. State*, 113 Nev. 275, 290-91, 934 P.2d 235, 245-46 (1997); *Thomas v. State*, 99 Nev. 757, 758, 670 P.2d 111, 112 (1983); *Bushnell v. State*, 97 Nev. 591, 593-94, 637 P.2d 529, 531 (1981). However, that is not what took place in the district court here, and an examination of the cases Chavez-Juarez relies upon reveals their inapplicability to the facts of the present case.
>
> In *Brake*, when the defendant refused to accept guilt, the district court told the defendant that for "your lack of remorse, this [c]ourt reaches the conclusion that the recommendation of the State is appropriate." 113 Nev. at 584, 939 P.2d at 1033 (internal quotations omitted). The *Brake* court held that because "it appears that the district court's consideration of [the defendant]'s lack of remorse likely resulted in the harshest possible sentence being assessed," the district court abused its discretion. *Id.* at 585, 939 P.2d at 1033.
>
> Likewise, in *Brown*, the district court warned the defendant that if he did not accept guilt, then the district court would not show mercy and would impose a harsher sentence. 113 Nev. at 290, 934 P.2d at 245. After the defendant refused to do so, the district court imposed a harsher sentence as a *direct* result of this refusal. *Id.* at 290-91, 934 P.2d at 245; *see also Thomas*, 99 Nev. at 758, 670 P.2d at 112 (holding that the district court abused its discretion because the defendant's refusal to admit guilt was a central consideration at sentencing); *Bushnell*, 97 Nev. at 593, 637 P.2d at 531 (holding that the district court abused its discretion at sentencing

5

because the "sole reason" for the district court's imposition of a harsher sentence was the defendant's decision to maintain his innocence).

Unlike the *Brake*, *Brown*, *Bushnell*, and *Thomas* defendants' refusals to admit guilt, Chavez-Juarez's denial of guilt did not directly contribute to his sentence and was not a central consideration at sentencing. The district court did, however, consider comments Chavez-Juarez made about his victim and her mother when he exercised his right to allocution. Among other statements, Chavez-Juarez remarked that their absence from the sentencing hearing "tell[s] you a lot of things about them," that the victim's mother was a prostitute and that he believed the victim learned her behavior from her prostitute mother.

The district court then imposed the sentence of 55-years-to-life and orally presented its justification for the sentence. In doing so, the district court discussed the nature of the case and the trial proceedings and concluded by stating that "engaging in these acts has earned [Chavez-Juarez] the sentences just imposed." As part of its sentencing statement, the district court made the following comments regarding Chavez-Juarez:

> His statements to the police, and his testimony at trial, reveal that his denial about the reality of what occurred is complete.
>
> His denial is complete in the sense that, as his allocution . . . reveals, he has projected, and blaming on an 8-year-old at the time of these offenses, the sexual misconduct that occurred.
>
> . . . [H]e would indicate to me that the 8- or 9-year-old victim was acting like a prostitute. And that kind of projection demonstrates a complete denial of responsibility for among the most serious kinds of misconduct which can be committed in our society.

Contrary to Chavez-Juarez's argument that these comments were about his refusal to admit guilt, they were instead made in the context of discussing Chavez-Juarez's statements blaming the victim and her mother for her crimes, and his statements contradicting his earlier confession.

[FN1] Chavez-Juarez raised the issue of his having taken responsibility for his actions when he argued that his confession to the police should be a mitigating factor because he allegedly cooperated with the police. Therefore, any reference by the district court to Chavez-Juarez's denial of responsibility was in response to the inconsistencies between Chavez-Juarez's seeking credit for his taped confession and his later denials regarding that confession.

At no point did the district court state that it based its sentence on Chavez-Juarez's refusal to accept responsibility or to admit guilt. The district court instead concluded that the defendant's *conduct* "earned" him the harsh sentence. Therefore, the district court did not abuse its discretion by imposing a sentence based on Chavez-Juarez's criminal conduct.

(ECF No. 22-11 at 8–11.)

## B. Conclusion

The Fifth Amendment commands that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; *see also Malloy v. Hogan*, 378 U.S. 1, 6 (1964) ("We hold today that the Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by the State."). This privilege against self-incrimination extends to the penalty phase. *See Estelle v. Smith*, 451 U.S. 454, 462 (1981) ("We can discern no basis to distinguish between the guilt and penalty phases of respondents' capital murder trial so far as the protection of the Fifth Amendment is concerned.").

The United States Supreme Court has determined that adverse inferences may not be drawn "from a defendant's silence in criminal proceedings, including sentencing." *Mitchell v. United States*, 526 U.S. 314, 329 (1999) (concluding that "[b]y holding petitioner's silence against her in determining the facts of the offense at the sentencing hearing, the District Court imposed an impermissible burden on the exercise of the constitutional right against compelled self-incrimination"). However, in coming to that determination, the Court declined to express a view on the separate question of "[w]hether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of the downward adjustment provided in [sentencing guidelines]." *Id.* at 330.

Regarding this separate question posed in *Mitchell*, the Supreme Court later stated that the Courts of Appeals have had "diverging approaches to the th[is] question [which] illustrate[s] the possibility of fairminded disagreement." *White v. Woodall*, 572 U.S. 415, 422 n.3 (2014); *see also United States v. Caro*, 597 F.3d 608, 629 (4th Cir. 2010) ("[O]ur sister circuits are divided over whether the Fifth Amendment prohibits using silence to show lack of remorse inviting a harsher sentence."). And the Ninth Circuit Court of Appeals stated, according to its interpretation of *Mitchell*, "it might be permissible . . . to draw from the defendant's silence conclusions about his lack of remorse or acceptance of responsibility." *Moore v. Helling*, 763 F.3d 1011, 1016 (9th

Cir. 2014). Thus, because there is no clearly established federal law applicable to Chavez-Juarez's claim that the state district court violated his right against self-incrimination by relying on his failure to accept guilt when fashioning his sentence, the Nevada Supreme Court's denial of relief was not contrary to, or an unreasonable application of, clearly established law as determined by the Supreme Court of the United States.[3]

Chavez-Juarez also contends that the Nevada Supreme Court's decision was based on an unreasonable determination of the facts. (*See* ECF No. 35 at 11.) Specifically, Chavez-Juarez takes issue with the Nevada Supreme Court's following factual determinations: (1) his "denial of guilt did not directly contribute to his sentence and was not a central consideration at sentencing" and (2) the state district court's comments about his denial of responsibility at his sentencing were "made in the context of discussing [his] statements blaming the victim and her mother for her crimes," rather than his refusal to admit guilt. (*Id.*)

During his sentencing hearing, Chavez-Juarez informed the state district court that A.C.'s mother "was a prostitute," which was "where [A.C.] got that type of behavior." (ECF No. 21-26 at 33.) The state district court noted that Chavez-Juarez's "denial is complete" because he blamed the victim for her behavior. (*Id.* at 37.) However, as the Nevada Supreme Court reasonably determined, this comment—rather than negatively remarking on Chavez-Juarez's maintaining of his innocence—was merely made in response to Chavez-Juarez's foregoing comment about A.C. learning her behavior from her prostitute mother. As such, the Nevada Supreme Court also reasonably determined that the state district court did not base its sentencing decision on Chavez-Juarez's

---

[3]Moreover, Chavez-Juarez testified at his trial and denied the accusations against him. (*See* ECF No. 21-18 at 156–68.) This testimony may have also waived Chavez-Juarez's Fifth Amendment privilege as to the contents of the statements in issue. *See, e.g., Harrison v. United States*, 392 U.S. 219, 222 (1968) ("A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives . . . ."); *see also Mitchell*, 526 U.S. at 321 ("The privilege is waived for the matters to which the witness testifies."). However, this Court need not and does not address this issue.

8

refusal to admit guilt. Indeed, the state district court explained that its sentencing decision was based on "the defendant's conduct" and the evidence presented at the trial, which "reveal[ed] beyond any doubt . . . the guilt of the defendant." (*Id.* at 37, 39.) Accordingly, the Nevada Supreme Court's decision was not based on an unreasonable determination of the facts.

Chavez-Juarez is not entitled to federal habeas relief on ground 3.[4]

## V. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Chavez-Juarez. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability (COA). Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *See id.*

Applying these standards, the Court finds that a certificate of appealability is unwarranted.

///

///

---

[4] Chavez-Juarez requests that this Court "[c]onduct an evidentiary hearing at which proof may be offered concerning the allegations in [his] amended petition and any defenses that may be raised by respondents." (ECF No. 15 at 20.) Chavez-Juarez fails to explain what evidence would be presented at an evidentiary hearing. Furthermore, this Court has already determined that Chavez-Juarez is not entitled to relief, and neither further factual development nor any evidence that may be proffered at an evidentiary hearing would affect this Court's reasons for denying relief. Chavez-Juarez's request for an evidentiary hearing is therefore denied.

## VI. CONCLUSION

It is therefore ordered that Chavez-Juarez's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 15) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk of Court is directed to substitute Perry Russell for Respondent State of Nevada, enter judgment accordingly, and close this case.

DATED THIS 4th Day of November 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE